# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

VIKKI COLEMAN,

        Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security, *et al.*,

        Defendants.

2:10-cv-02137-GMN -VCF

**REPORT AND RECOMMENDATION**

## INTRODUCTION

Vikki Coleman filed applications for disability insurance benefits (DIS) and supplemental security income (SSI) benefits on August 26, 2009, with an amended onset date of March 17, 2008. AR[1] 36, 95-107. Coleman's claims were denied at both the initial and reconsideration levels. AR 42-51. On January 7, 2010, Administrative Law Judge Don Curdie (hereinafter "ALJ") held a hearing, which Coleman, her attorney, and a vocational expert attended. AR 19-41. After the hearing, on March 17, 2010, the ALJ issued a decision denying Coleman's claims. AR 7-18. In his decision, the ALJ held that Coleman is not disabled under sections 216(i) and 223(d) of the Social Security Act, and that she is "capable of performing past relevant work as a bank lock box clerk and cashier." AR 17.

After Coleman appealed the decision, on October 29, 2010, the Appeals Council denied her request for review. AR 1-5. The Appeals Council "found no reason under [their] rules to review the Administrative Law Judge's decision," and the ALJ's decision became final. AR 1. On January 21, 2011, Coleman filed her complaint against Michael J. Astrue, Commissioner of Social Security, seeking judicial review of the final decision denying her claims for benefits. (#8). Defendant Astrue filed an

---

[1] "AR" refers to the Adminstrative Record submitted to the court for *in camera* review on April 5, 2011 (#14).

answer (#13) asking this court to affirm the decision of the ALJ. (#13). Pursuant to the Order Concerning Review of Social Security Cases (#15), plaintiff Coleman filed her Motion For Reversal and Remand. (#16). Defendant Astrue filed an Opposition (#17) and a Cross-Motion To Affirm (#18). Plaintiff Coleman did not file a reply in support of her motion (#16) or an opposition to defendant's cross-motion (#18).

Having reviewed these written arguments, the Social Security AR, and all other matters of record in this case, the undersigned judge respectfully submits the following Report and Recommendation.

## DISCUSSION

### I. Issues Presented.

In plaintiff Coleman's motion (#16), she provides the court with summaries of the testimonial evidence, medical evidence, and the administrative proceedings. Defendant states that the plaintiff's summaries of the testimony and medical evidence are "generally adequate," and that the transcript of the administrative hearing "can still be adequately comprehended despite the fact that the transcript includes the word "inaudible" in certain places." (#17).

Plaintiff Coleman asserts that the ALJ erred in finding that she could return to her past relevant work, and specifically argues that (1) the additional evidence submitted to the Appeals Council after the ALJ's decision was not properly considered and (2) that the ALJ improperly evaluated Coleman's credibility. (#16).

### II. Standard of Review.

This court may set aside the Social Security Administration Commissioner's denial of disability benefits only when the findings of the ALJ are based on legal error or are not supported by substantial evidence in the record as a whole. Social Security Act, Sections 216(i), 223, 42 U.S.C. §§ 416(i) and 423; *Bustamante v. Massanari,* 262 F.3d 949, 953 (9th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). "Where evidence is

2

susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *Id.*

## III. Analysis

### A. Substantial Evidence Supports The Finding That The Evidence Submitted Upon Appeal Of The ALJ's Decision Was Properly Considered

#### 1. Additional Evidence - Medical Assessment Form

Pursuant to 20 C.F.R. §§ 404.970(b) and 416.147(b), which permit a claimant to submit new evidence to the Appeals Council for review, plaintiff Coleman provided the Appeals Council with the medical assessment of Paul J. Kapsar M.S.N., A.P.N, from the UMC Boulder Primary Care Center. AR 208. The assessment was conducted for the Department of Social Service, and was completed on a form provided by the same. *Id.* The form contains several sections relating to the diagnosis, prognosis, treatment, current medications, specific limitations, and ability to participate in rehabilitation activities. *Id.* The party completing the form is provided with options within each section, and simply has to circle the appropriate answers or responses. *Id.*

In Mr. Kapsar's assessment, he indicated that plaintiff Coleman suffers from acute right knee pain, gout, seizure disorder, mobility dysfunction, and hypertension. *Id.* Mr. Kapsar's prognosis was that plaintiff has a "chronic medical condition," is in "life time medical need," and "IS NOT likely to return to workforce." *Id.* The assessment further indicated that plaintiff Coleman has limitations on work activities, such as; (1) she cannot stand for more than 45 minutes, (2) she must be able to switch positions every 20 minutes, and (3) she cannot bend or reach below waist level. *Id.*

#### 2. Argument

In plaintiff Coleman's motion (#16), she argues that the Appeals Council "failed to specifically address Kaspar's assessment, except to state generally that none of the evidence submitted provided any basis for changing the ALJ's decision." Defendant argues that the Appeals Council did in fact consider the assessment and properly upheld the ALJ's decision. (#17). As support for this contention, the defendant asserts that the assessment form was completed by a registered nurse, who is not an

"acceptable medical source," and was merely a "check-in-the-box or fill-in-the-blank" type form. *See* 20 C.F.R. § 404.1513(d); *See also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)(holding that the evidence of an impairment in the form of "check-off reports" may be rejected for lack of explanation of the bases for their conclusion.).

### 3.     Discussion

The Appeals Council's order stated that they "considered the reasons [plaintiff] disagree[d] with the [ALJ's] decision and the additional evidence listed on the enclosed Order of Appeals Council." AR 1. In the order, the Appeals Council made three additional pieces of evidence part of the record: (1) St. Rose Dominican Hospital records dated 3/6/2010 - 6 pages (Exhibit B25F), (2) Dr. Frederick J. Lippman, M.D. records dated 10/20/09-8/30/10 - 47 pages (Exhibit B26F), and (3) Work Assessment Form - Department of Social Service, Clark County, NV - 2 pages (Exhibit B14E). AR 5. The work assessment form identified by the Appeals Council and marked as Exhibit B14E is the form completed by Paul J. Kapsar. AR 208. Thus, the Appeals Council specifically stated that they "considered" Kaspar's assessment as "additional evidence." AR 1.

Plaintiff Coleman does not provide the court with any support for her contention that the Appeals Council must "specifically address Kaspar's assessment." (#16). Rather, she cites case law and Social Security rulings holding that evidence by lay witnesses, such as registered nurses, "cannot be *disregarded* without comment," and, that if an ALJ chooses to *discount* testimony, "he must provide reasons that are germane to each witness." (#16)(emphasis added); *Dodrill v. Shalala,* 12 F.3d 915, 918-19 (9th Cir. 1993); *See* 20 C.F.R. § 404.1513(d); *See also* Social Security Ruling 06-03p. Nothing from the Appeals Council's order states that they "disregarded" or "discounted" Kaspar's assessment. AR 1-5. The order states that they "considered" the assessment and found no reason to review the ALJ's decision. AR 1. Thus, as the Appeals Council was not required to specifically address the assessment, especially in light of the fact that it was in the form of a "check-off" report, there was no error. *See Crane*, 76 F.3d at 253.

### B. The ALJ Properly Assessed Plaintiff's Credibility

In the ALJ's decision, he held that the plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the...residual functional capacity assessment." AR 14. The ALJ stated that he evaluated plaintiff Coleman's subjective allegations and complaints utilizing the criteria set forth in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984). The plaintiff argues that the ALJ's credibility assessment fell short, and that if he had properly believed all her testimony, he would have found her unable to return to work. (#16).

"An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). "An ALJ cannot be required to believe every allegation of [disability]," but he is required to make specific credibility findings. *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989); SSR 96-7p. The ALJ's finding of credibility must be properly supported by the record and sufficiently specific to ensure a reviewing court that he did not "arbitrarily discredit" a claimant's subjective testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

#### 1. Medical Findings

In assessing the plaintiff's credibility, the ALJ first stated that the *objective* "medical findings that are present are not consistent with the disabling level of pain alleged by the claimant." AR 16. The ALJ then noted that he recognized that her credibility could not be disregarded on that basis alone, but that it was a factor that he considered. *Id.* The ALJ specifically stated that he gave "great weight" to (1) the opinion of treating physician Ron South, M.D., who stated on January 17, 2009, that he had no problem with plaintiff resuming her normal activities, (2) the fact that on several occasions physicians recommended that plaintiff participate in exercise programs, and (3) that the record does not contain any opinions from treating or examining physicians indicating that the plaintiff is disabled or has limitations greater than those determined in his decision. AR 16-17. The ALJ also stated that there is no objective evidence to show that plaintiff Coleman has "ever been advised...that her symptoms and/or

5

impairments have ever been of such severity as to completely preclude involvement in substantial gainful activity at all exertional levels." AR 17.

In plaintiff's motion, she argues that the ALJ failed to demonstrate specific instances of inconsistencies with regards to the medical findings. (#16). However, the ALJ did provide specific examples of the inconsistencies. Plaintiff alleges that she is unable to function normally due to her seizures, but, as the ALJ noted, plaintiff had only a single seizure in 2003 and another episode in 2008. (#17). The ALJ also noted that in December of 2008[2], Dr. South reported that he had no problem with plaintiff resuming normal activity, since she had been seizure free for so long. AR 16. The record reveals that the plaintiff's seizures only occurred when she was either not taking her medicine or taking the wrong prescription. AR 14, 780-83.

Another example of the inconsistencies pointed out by the ALJ, is when the plaintiff claimed that she was physically unable to do normal daily activities, while treating physicians actually advised her to exercise 3 times a week and did not limit her activities. AR 16, 552, 734-35, 795. While it is true that the Eighth Circuit held that exercise as therapy is not indicative of what a claimant can do on a sustained basis, the record demonstrated that plaintiff Coleman was advised on November 13, 2009, to exercise, *not* as therapy, but as a result of a nutrition counseling session for diabetes. AR 734. Thus, the ALJ did not "arbitrarily decide" that her statements were inconsistent, and even provided examples of the inconsistencies. *Thomas,* 278 F.3d 947, 958 2002).

**2.      Daily Activities**

The second factor that the ALJ considered was the plaintiff's ability to engage in daily activities. AR 16. The ALJ determined that the plaintiff had "described daily activities, which are not limited to the extent one would expect, given the complaint of disabling symptoms and limitations. *Id.* In plaintiff's motion, she asserts that the ALJ failed to consider all the qualifications and limitations that

---

[2] The ALJ notes this visit as taking place on January 17, 2009. AR 16. However, the defendant argues that the actual date was December 3, 2008. (#17).

6

plaintiff Coleman specified with regards to her ability to carry out activities. (#16). In plaintiff Coleman's function report completed on September 16, 2008, she answered several questions about her daily activities. AR 170-177.

Plaintiff Coleman stated that (1) from the time she wakes up to the time she goes to bed, "after [a] headache, [she'll] put clothes on, eat, [and] watch TV," (2) her son cares for her, and she can no longer work, walk for hours, grocery shop, drive, or carry out daily activities, (3) she can still dress herself, but she is "limited," (4) she can take showers "when someone is home, just in case [she has] a seizure," (5) she can still feed herself and use the toilet, (6) it takes her all day to prepare meals because she cannot hold the pots and pans, so she only cooks food twice a week, (7) she does not go out alone or drive for fear of a seizure, and (8) she goes shopping once a month for food. *Id.* Plaintiff Coleman stated that her interests are sewing and watching TV, but that she can no longer sew because she falls asleep, its hard to concentrate/focus, and that it "feel[s] like something [is] in [her] left eye." AR 174. As far as interactions with others, plaintiff Coleman talks with others everyday, depending how she feels when she wakes up, and she attends church "sometimes." *Id.*

In discussing plaintiff's daily activities, the ALJ noted her ability to take care of her personal needs, shop, prepare meals, manage financial matters, use public transportation, spend time with others, attend church occasionally, and watch TV. AR 16. The ALJ determined that her daily activities were not "limited to the extent" one would expect, given her complaints of disability. *Id.* While it is true that the ALJ did not go to great lengths discussing each limitation/qualification, he did consider and cite Exhibit B-6E, which is plaintiff Coleman's function report containing her daily activities and the limitations thereto. AR 16. The ALJ stated that plaintiff's activities "where not limited *to the extent* one would expect," and did not find that her activities were not limited at all. *Id.* The ALJ properly recognized her "limitations," but concluded that they were not to the level of a disabled person. *Id;* See *Gray v. Apfel,* 192 F.3d 799 (8th Cir. 1999).

. . .

7

### 3. Duration, Frequency, Intensity, and Aggravating Factors

The ALJ next addressed the duration, frequency, and intensity of plaintiff's alleged pain. AR 16. The ALJ recognized that plaintiff alleged that she had pain for hours, every day, but that it did not interfere with her sleep. Id. Plaintiff Coleman also stated that no specific acts or circumstances cause her pain, but that the pain starts with headaches when she wakes up. *Id.* In recognizing that all pain and discomfort are not disabling, and that "the mere fact that work activity may cause some degree of pain or other discomfort does not require the finding of disability," the ALJ found that plaintiff's allegations do not support a claim for disability. *Id;* See *Benskin v. Bowen,* 830 F.2d 878 (8th Cir. 1987); *Jones v. Charter,* 86 F.3d 823, 826 (8th Cir. 1996). Plaintiff does not dispute the ALJ's determination of these factors in her motion, so the court need not discuss them. (#16).

### 4. Dosage, Effectiveness and Side Effects Of Medications

The ALJ next considered the dosage, effectiveness, and side effects of medications prescribed to plaintiff Coleman. AR 16. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec.,* 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ noted in his decision that plaintiff Coleman has been prescribed several different medications, and that the record reveals that the medications control the symptoms complained of. AR 16. The plaintiff does not dispute these findings in her motion. (#16). The court notes that the record demonstrates that both her seizures and high blood pressure have been successfully treated with medication. AR 14, 335-36, 433, 660, 780.

### 5. Functional restrictions

The final factor that the ALJ considered was the plaintiff's functional restrictions. AR 16. Plaintiff Coleman stated in her function report that she can only sit for 30 minutes, lift 0-5 pounds, cannot stand for long, can only walk one block, cannot use her hands a lot, cannot bend, has little memory, and has trouble concentrating and completing tasks. AR 175. In the remarks section, plaintiff asserts that she is afraid of having another seizure, does not go out alone, needs complete quiet, has

8

severe headaches, and gets light headed when she stands up too quick. AR 177. In the hearing held before the ALJ, plaintiff Coleman testified that she believes she cannot return to work because of her "knees and...blood pressure mostly, because...in [her] work you...do a lot of bending, lifting, [and] standing..," and because she never knows when her seizures will come on. AR 27-28.

In the ALJ's order, he recognized the functional restrictions plaintiff alleged, but held that one is only disabled when "her *documented* impairment is so severe that she is prevented from doing any productive activity." AR 16 (emphasis added). The record before the ALJ and this court contradicts plaintiff's alleged functional restrictions. As recognized by the ALJ, plaintiff testified that she took a bus from Arkansas to Nevada with her son. AR 16, 27. This testimony contradicts her previous assertion that she could not sit for more than 30 minutes. AR 28. Plaintiff Coleman also testified that she has "one or maybe two" seizures a month, and that sometimes, she "might go a whole month seizing." AR 30. This is contradicted by the documented medical records, which indicate that when plaintiff is taking the correct medication prescribed to her, she is "virtually completely seizure free," and that in December 2008, she had not had a seizure since August of 2008. AR 780. As another example of the inconsistencies, plaintiff stated that her blood pressure prevents her from working, but the record indicates that her blood pressure only became an issue again when she stopped taking her medications, and her blood pressure was back to normal when she resumed taking the proper medication. AR 335-36.

. . .
. . .
. . .
. . .
. . .
. . .
. . .

9

**RECOMMENDATION**

The record before this court demonstrates that the Appeals Council properly considered the additional evidence and that the requested remand for further analysis of the plaintiff's credibility is not justified. Because substantial evidence supports the ALJ's decision and the record does not support a finding of legal error, it is the recommendation of the undersigned United States Magistrate Judge that the defendant's Motion to Affirm (#18) be GRANTED and the plaintiff's Motion For Remand (#16) be DENIED. *See* SSA, Sections 216(I), 223, 42 U.S.C. §§ 416(I) and 423; *Bustamante,* 262 F.3d 949, 953.

DATED this 14th day of December, 2011.

**CAM FERENBACH**
**UNITED STATES MAGISTRATE JUDGE**